**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**ANTHONY KEVIN FIELDS**,

    Petitioner,

    v.

**WARDEN WILLIAM SMITH, et al.**,

    Respondents.

Case No. 1:14-cv-01629 (CRC)

**MEMORANDUM OPINION AND ORDER**

Petitioner Anthony Fields filed this action for a writ of habeas corpus in September 2014, while detained at the District of Columbia Jail. See Pet., ECF No. 1.[1] Fields was in custody following the execution of a warrant issued by the United States Parole Commission ("the Commission") for violating the terms of his supervised release.[2] In his petition, filed *pro se*, Fields claims that this warrant was based on D.C. sentences that had expired before its issuance. Because the Commission's documentation shows otherwise, and because no other grounds exist for issuing the writ, the Court will deny Fields's petition and dismiss this case.

**I.   Background**

In June 2004, Fields was arrested for contempt of an order that barred him from being within a five-block radius of an address in the District's northwest quadrant. He was placed in a halfway house on work release. In November 2004, Fields was charged with escape for failing to

---

[1] In addition to naming D.C. Jail Warden William Smith, Fields has named U.S. Parole Commission Chairman Isaac Fulwood, Jr., and former Attorney General Eric H. Holder, Jr., as respondents in this action. As Fields's then-immediate custodian, Warden Smith is the only proper respondent. Rumsfeld v. Padilla, 542 U.S. 426, 434–35 (2004).

[2] Under the National Capital Revitalization and Self-Government Improvement Act of 1997, "District of Columbia offenders . . . are 'subject to the authority of the United States Parole Commission until completion of the term of supervised release.'" Doe v. U.S. Parole Comm'n, 602 F. App'x 530, 531 (D.C. Cir. 2015) (quoting D.C. Code § 24-403.01(b)(6)).

report to the halfway house.  Govt.'s Resp. Pet. ("Resp."), ECF No. 7, Ex. 1 ("Presentence Report") at 4–5.[3]  The Superior Court of the District of Columbia convicted Fields of contempt (Case No. F-3620-04) and escape (Case No. F-7573-04), and on May 26, 2005, it sentenced him to consecutive terms of nine months' imprisonment followed by three years' supervised release.  Resp., Exs. 2–4.  On January 26, 2006, Fields was released on supervision until the expiration of his sentences on January 26, 2009.  Resp., Ex. 5.  On August 27, 2007, the Commission issued a so-called violator warrant, which was executed upon Fields's arrest on July 19, 2008.  Resp., Ex. 9.  Following a hearing, the Commission revoked Fields's supervised-release term on March 4, 2009, and imposed a prison term of fourteen months from July 19, 2008, followed by a supervised-release term of 46 months.  Resp., Ex. 13.

Fields was again released on supervision on August 14, 2009, until the expiration of his sentence on June 13, 2013.  Resp., Exs. 4, 13, 17.  On November 16, 2012, the Commission issued another violator warrant, which was executed on November 28, 2012.  Following a hearing, the Commission revoked Fields's supervised-release term and imposed a prison term of sixteen months followed by a supervised-release term of 26 months.  Resp., Ex. 23–24.  Fields was released on supervision a third time on January 24, 2014, until the expiration of his sentence on March 23, 2016.  Resp. Exs. 32–34.  On April 25, 2014, the Commission issued yet another violator warrant, which was executed upon Fields's arrest on June 26, 2014.  Resp. Exs. 36–38.  Fields brought this habeas action three months later, on September 29, 2014.

---

[3]  In addition to the Petition and the Government's Response, the Court has also considered the "Motion from Petitioner [i]n Response to Motion I Got from United Sates on My Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2243" ("Reply"), ECF No. 13; the Supplement to the United States' Response ("Govt.'s Supp."), ECF No. 12; and Petitioner's "Motion on the Preju[d]ice and Illegal Sentence" ("Pet'r's Supp."), ECF No. 14.

On December 8, 2014, the Commission convened a revocation hearing at the District's Correctional Treatment Facility. It postponed further proceedings upon Fields's request for appointed counsel from the Federal Public Defender's Office. Govt.'s Supp. 1. Following a hearing at the Federal Detention Center in Philadelphia on May 19, 2015, the Commission revoked Fields's supervised-release term and imposed a prison term of 26 months, which "will exhaust the maximum authorized new term of imprisonment." Pet'r's Supp., Not. of Action, June 8, 2015, at 3. Fields is currently incarcerated at the Federal Correctional Institution in Beaver, West Virginia.

## II.     Analysis

District of Columbia prisoners are entitled to habeas corpus relief under 28 U.S.C. § 2241 upon a showing that their "custody [is] in violation of the Constitution or laws or treaties of the United States." Id. § 2241(c)(3). Fields contends that (1) "[s]ince parole is a constitutionally protected liberty interest, due process requires that a state provide [the] basic right of fair treatment when it seek[s] to revoke parole"; (2) he has been subjected to cruel and unusual punishment, in violation of the Eighth Amendment, because the Commission has detained him after the expiration of his sentences; and (3) he has been "twice put in jeopardy of life or deprived of . . . liberty." Pet. 7–8.[4]

The Government responds first that Fields's petition should not even be considered because he failed to exhaust his administrative remedies. Resp. 7–8. When the Government made this

---

[4] Fields also claims that he was deprived of his Sixth Amendment right to effective assistance of counsel during the revocation proceedings. Id. 7. But the Sixth Amendment right to counsel does not apply to parole-revocation proceedings. See Hyser v. Reed, 318 F.2d 225, 237 (D.C. Cir. 1963) ("[N]or would we accept the contention that the Sixth Amendment applies to parole revocation proceedings," for "[t]he Sixth Amendment by its terms governs only 'criminal prosecutions.'") (quoting Counselman v. Hitchcock, 142 U.S. 547, 563 (1892)); see also Rothgery v. Gillespie Cnty, 554 U.S. 191, 198 (2008) (reiterating that "the Sixth Amendment right of the 'accused' to assistance of counsel in 'all criminal prosecutions' is limited by its terms") (quoting U.S. Const. amend. VI).

written argument in November 2014, the Commission's revocation hearing "ha[d] not been concluded." Id. 8. The Commission has since held a hearing and revoked Fields's supervised-release term. To the extent that Fields seeks review of the Commission's June 8, 2015 Notice of Action attached to his supplemental filing, the Court agrees that he must exhaust his administrative remedies by, as advised in the Notice, appealing the decision to the National Appeals Board pursuant to 28 C.F.R. § 2.220. Thereafter, any habeas petition should be presented to the district court where Fields is presently incarcerated, the U.S. District Court for the Southern District of West Virginia. See Stokes v. U.S. Parole Comm'n, 374 F.3d 1235, 1239 (D.C. Cir. 2004) (holding that a "district court may not entertain a habeas petition involving present physical custody unless the respondent custodian is within its territorial jurisdiction").

Because the Commission's 2015 revocation decision does not affect Fields's constitutional challenges to his detention at the D.C. Jail, the Court will address those grounds for relief.

### A. Due Process

Contrary to Fields's contention, D.C. prisoners do not have a Fifth Amendment liberty interest in their release on parole or supervision. Ellis v. District of Columbia, 84 F.3d 1413, 1420 (D.C. Cir. 1996); see also Anderson v. U.S. Parole Comm'n, CV No. 10–1451, 2010 WL 5185832, at *2 (D.D.C. Dec. 22, 2010) (citing Colts v. U.S. Parole Comm'n, 531 F. Supp. 2d 8, 13 n.4 (D.D.C. 2008)) ("For most purposes, supervised release is the functional equivalent of parole and the law pertaining to the revocation of parole is applicable to the revocation of supervised release."). Fields is nonetheless correct that, once released, D.C. prisoners are entitled to notice and a meaningful opportunity to be heard prior to the revocation of a supervised-release term. See Sutherland v. McCall, 709 F.2d 730, 732–33 (D.C. Cir. 1983). At a minimum, due process requires the following six elements:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses . . . ; (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Darden v. U.S. Parole Comm'n, 61 F. Supp. 3d 68, 72–73 (D.D.C. 2014) (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)).

Fields has not pointed to any specific deficiencies in the revocation proceedings, and the record establishes the Commission's compliance with each of the above six requirements every time it revoked the supervised-release terms underlying this action. Consequently, the Court finds no basis for issuing the writ on due-process grounds.

      B.      Cruel and Unusual Punishment

The Eighth Amendment to the Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "[D]etention beyond the expiration of a sentence may constitute cruel and unusual punishment if it is the result of deliberate indifference to a prisoner's liberty interest or violates due process." Campbell v. U.S. Parole Comm'n, 563 F. Supp. 2d 23, 26 (D.D.C. 2008) (citing Haygood v. Younger, 769 F.2d 1350, 1355 (9th Cir. 1985)).

Fields's Eighth Amendment claim—though misguided—stems from an understandable confusion about the laws and regulations governing D.C. supervisees. The federal Court Services and Offender Supervision Agency supervises "any offender who is released from imprisonment for any term of supervised release imposed by the Superior Court . . . . Such offender [is] subject to the authority of the United States Parole Commission until completion of the term of supervised release." D.C. Code § 24-133(c)(2).

With two exceptions, the Commission "shall have and exercise the same authority as is vested in the United States district courts by [18 U.S.C. § 3583 (d)–(i)]." Id.[5] Thus, when the Commission determines that a supervisee has violated the conditions of his release, it has the power to reinstate supervision or to revoke supervision and impose a new term of imprisonment. 28 C.F.R. § 2.218(a)–(b). One whose supervision is revoked "shall receive no credit for time spent on supervised release, including any time spent in confinement on other sentences (or in a halfway house as a condition of supervised release) prior to the execution of the Commission's warrant." Id. § 2.218(c). In other words, the sentence is recalculated to begin from the time served prior to one's release.

If, upon revoking supervised release, "the Commission imposes a new term of imprisonment that is less than the applicable maximum" authorized by statute, it may then "impose a further term of supervised release to commence after the new term of imprisonment has been served." Id. § 2.218(b). The new supervised-release term is determined by "the original maximum term of supervised release that the sentencing court was authorized to impose for the offense of conviction, less the term of imprisonment imposed by the Commission upon revocation of supervised release." Id. § 2.219(b)(2). The maximum term a D.C. Code offender may serve upon revocation is five years (sixty months), which applies when the maximum prison term "authorized for the offense is life, or [when] the offense is statutorily designated as a Class A felony." Id. § 2.219(a)(1). The Commission's "general policy" is "to impose a further term of supervised release that is the maximum term of supervised release permitted by § 2.219." Id. § 2.218(e).

---

[5] Fields's contention that his revocation sentence falls under the exception requiring the Commission to obtain a court order before extending a term of supervised release, see D.C. Code § 24-133(c)(2)(B), or that it was erroneously calculated, Reply 3–4, is a matter for the Appeals Board in the first instance.

As the Government rightly notes, then, the Commission "may continue to reimpose a term of supervised release until (1) a defendant successfully completes a term of supervised release, or (2) the Commission has imposed the maximum authorized prison term(s), whichever comes first." Resp. 9. The maximum prison term for contempt is life, and the maximum supervised-release term for contempt is sixty months. Resp., Presentence Report at 2.[6] When Fields's supervision was first revoked in 2009, the Commission could have imposed a maximum prison term of sixty months. Resp. 10; see also 28 C.F.R. § 2.219(a) ("[T]he maximum authorized term of imprisonment that the Commission may require the offender to serve . . . is determined by reference to the maximum authorized term of imprisonment for the offense of conviction."). Instead, it imposed a prison term of fourteen months followed by a supervised-release term of 46 months. Resp., Ex. 13. When Fields failed to complete the second supervised-release term, the Commission, upon revocation, could have imposed a maximum prison term of 42 months. Resp., Ex. 24. Instead, it imposed a prison term of sixteen months followed by a supervised-release term of 26 months. Resp., Exs. 32–33.

Fields had served only four months of his second supervised-release term when the Commission issued the April 25, 2014 violator warrant underlying this action. Because this term was set to expire on March 23, 2016, Fields was still "an offender . . . subject to the authority of the United States Parole Commission," D.C. Code § 24-133(c)(2), at the time of his arrest and detention at the D.C. Jail. Consequently, Fields is not entitled to the writ on the mistaken premise that his Eighth Amendment rights were violated because his underlying sentences had expired.

---

[6] The D.C. Court of Appeals has determined that the criminal-contempt statute under which Fields was convicted, D.C. Code § 11-944, "clearly allows a court to punish for disobedience of its order . . . and places no limits on the possible punishment." Caldwell v. United States, 595 A.2d 961, 966 (D.C. 1991).

C.   Double Jeopardy

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Fields invokes the Double Jeopardy Clause without any supporting argument. Nevertheless, it is established that the Clause does not apply in the parole setting because revocation proceedings "are not new criminal prosecutions but rather continuations of the original prosecutions which resulted in . . . parole." Saunders v. United States, 72 F. Supp. 3d 105, 109 (D.D.C. 2014) (quoting Crowe v. Johnston, No. 11–2019, 2011 WL 5970881, at *1 (D.D.C. Nov. 29, 2011)); accord Campbell, 563 F. Supp. 2d at 27 (concluding that the Double Jeopardy Clause "is simply not applicable to parole decisions") (citing United States v. DiFrancesco, 449 U.S. 117, 137 (1980)). The Court will therefore not issue the writ on this unmeritorious ground.

### III.   Conclusion

For the reasons stated in the accompanying Memorandum Opinion, it is

**ORDERED** that the Order to Show Cause [ECF No. 2] be **DISCHARGED**; it is further

**ORDERED** that petitioner's pending motion [ECF No. 14] be **DENIED** as moot; and it is further

**ORDERED** that the petition for a writ of habeas corpus [ECF No. 1] be **DENIED**, and that this case be **DISMISSED**. This is a final, appealable order.

CHRISTOPHER R. COOPER  
United States District Judge

Date:   January 4, 2016